IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ROBERT P.,

        Plaintiff,

v.

        Civil Action 3:22-cv-290
        Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

**OPINION AND ORDER**

Plaintiff, Robert P. brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Amended Statement of Errors (Doc. 13) and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff previously filed applications for DIB on August 23, 2010, January 30, 2014, and January 31, 2016. (R. at 18–19). The last application proceeded to an administrative hearing, and the Administrative Law Judge issued an unfavorable decision. (*See* R. at 68–93).

Plaintiff protectively filed his current application for DIB on August 28, 2020, asserting disability beginning February 14, 2014, due to HIV, hypertension, hypertriglyceridemia, herniation of cervical intervertebral disc, myelopathy, diverticulitis, lumbar radiculopathy, depression, anxiety, and PTSD. (R. at 204–10, 229). After his application was denied initially in March 2021, and on reconsideration in May 2021, the Administrative Law Judge (the "ALJ") held a telephone hearing on September 28, 2021, before issuing a decision denying Plaintiff's application on October 15, 2021. (R. at 15–37).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 14, 2022 (Doc. 1), and the Commissioner filed the administrative record on December 8, 2022 (Doc. 6). The matter has been briefed and is ripe for consideration. (Docs. 13, 14).

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's testimony from the administrative hearing as follows:

> At the September 2021 hearing, [Plaintiff] testified that his back pain is primarily focused on his neck, but can radiate throughout his spine and cause numbness, tingling, and pain in both his upper and lower extremities. I note that this is a not unusual symptom of degenerative spinal conditions. [ ] He can only stand for an hour and sit for twenty minutes before needing to change positions, spends "at least half the day," or between six and eight hours, lying on a heating pad, and is unable to drive long distances, which he defined as over fifty miles, because of back spasms. [Plaintiff] has been recommended for spinal surgery, but has declined because of adverse effects from previous operations. He also has frequent bouts of nausea as a side effect of some of his HIV medications, which he can control with additional medications. Despite this, [Plaintiff] needs to use the restroom numerous times a day, and his digestive difficulties are exacerbated by both stress and medication usage.

(R. at 28–29, footnote removed).

### B. Relevant Medical Evidence

The ALJ summarized the relevant medical records as to Plaintiff's severe physical impairments as follows:

> The exertional, postural, climbing, and hazard exposure limitations noted above are based on [Plaintiff]'s degenerative disc disease, binary colic, and gastritis. In addition to medical evidence of record considered in the prior decision (see Exhibit B1A), [Plaintiff]'s degenerative disc disease is substantiated by numerous assessments between at least April 2018 and August 2021 by Dr. Proulx, who variously noted the presence of neck pain from chronic disc disease, chronic left-sided thoracic back pain, cervical disc herniation, and lumbar radiculopathy (see, for example, Exhibits B1F at 15, 22, 26, 29, 36, B6F at 3, 34). Dr. Swedberg noted an impression of neck and lower back pain in his February 2021 consultative examination report (Exhibit B4F at 9). As part of the consultative examination, Eric Brander, M.D., reviewed x-ray imaging and noted an impression of degenerative cervical changes (Id. at 11). In September 2021, Yungao Ding, M.D., reviewed CT scan results and repeated Dr. Brandser's impression (Exhibit B8F at 3). Three days later, Jason E. Roberts, APRN, assessed [Plaintiff] with cervical disc herniation

with radiculopathy (Exhibit B9F at 3).

[Plaintiff]'s digestive conditions are substantiated by medical evidence of record considered in the prior decision (see Exhibit B1A). In addition, Dr. Proulx variously noted the presence of irritable bowel syndrome (IBS) with diarrhea, or IBS flares associated with [Plaintiff]'s mental impairments (see, for example, Exhibit B1F at 14, 30, 36).

(R. at 28).

The prior ALJ, Stuart Adkins, summarized the relevant medical record as to Plaintiff's gastrointestinal impairment in his October 24, 2018, administrative decision as follows:

The record also demonstrates a longstanding history of gastrointestinal complaints, but the record does not support symptoms as intense, persistent, or limiting as alleged. In July 2015, [Plaintiff] reported to his primary care physician with complaints of vomiting and night sweats. He reported tenderness from his navel to groin that feels like a bruise but sometimes has shooting pain, particularly with bowel movements. He stated that he was having six to eight loose bowel movements per day with decreased appetite. On examination, the abdomen was soft and bowel sounds were normal. He exhibited no distension. There was tenderness in the epigastric area and suprapubic area but with no rebounding or guarding. August 2015 primary care notes show complaints of diarrhea and problems eating with concern about clostridium difficile, as he had it before. On examination, there was mild mid lower abdominal discomfort to palpation, but there was no mass felt and the abdomen was not distended. He also demonstrated positive bowel sounds. In November 2015, [Plaintiff] reported to the emergency room with heartburn and was diagnosed with reflux. His abdomen was soft, nondistended, and nontender throughout with present bowel sounds and no guarding or rebounding. He continued to complain of diarrhea throughout the record, but on examination, he generally presented with minimal tenderness to palpation in the left lower quadrant with no rebounding or guarding. In February 2016, [Plaintiff] complained of some burning type discomfort in the low abdomen and from below the umbilicus to the pubic bone. The abdomen was nontender to palpation. May 2016 primary care notes continue to reflect complaints of abdominal pain in the left upper quadrant and epigastric with cramps, chills, and diarrhea, and he was worried about diverticulitis. On examination, the abdomen had minimal tenderness in the bilateral lower quadrants with no rebounding or guarding and normal bowel sounds. December 2016 primary care notes reflect four bowel movements per day, but a "super juice" was helping with that. The abdomen was soft and nontender to palpation. March 2017 emergency room notes show complaints of lower right abdominal pain, chest pain, and frequent bowel movements. He was nauseated but did not vomit. On examination, [Plaintiff] had normal bowel sounds. His abdomen was soft with mild epigastric and right upper abdominal tenderness but with no rebounding, rigidity, guarding, or masses. He felt better with medication, and he was diagnosed with

> abdominal pain and gastritis. December 2017 primary care notes show that he was complaining of more diarrhea and heartburn. A fecal biome test did not show clostridium difficile, but he was lacking some good bacteria. He stated that he had a history of sludge in the gallbladder. There was right upper quadrant tenderness to palpation with guarding and a positive Murphy's sign. His bowel sounds were hyperactive. Biliary colic was suspected, and he was instructed to avoid fatty food and get an ultrasound of the abdomen. An ultrasound of the abdomen showed a fatty liver and positive sonographic Murphy's sign, though the ultrasound of the gallbladder was otherwise normal. The nuclear medicine scan of the gallbladder showed only mildly abnormally decreased gallbladder ejection fraction, which was concerning for chronic cholecystitis. April 2018 primary care notes reflect less diarrhea and acid reflux since changing his medication. He reported no genitourinary pain or dysuria. The limited objective findings on examinations throughout the record do not support symptoms as alleged. As such, the reduced range of light work in the above residual functional capacity fully addresses his gastrointestinal symptoms and limitations.

(R. at 80–81, citation to the original record omitted).

### C. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirement on September 30, 2021, and he did engage in substantial gainful employment in 2014. (R. at 21). However, there has been a continuous 12-month period(s) during which Plaintiff did not engage in substantial gainful activity. (R. at 23). The ALJ determined that, through his date last insured, Plaintiff had the following severe impairments: degenerative disc disease, biliary colic, gastritis, anxiety disorder, depressive disorder, posttraumatic stress disorder. (*Id.*). Still, the ALJ found that, through his date last insured, none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (R. at 24).

As to Plaintiff's residual functional capacity ("RFC"), through the date last insured, the ALJ concluded:

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions: No more than occasional stooping, crawling, or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. No work at unprotected heights or around moving mechanical parts. [Plaintiff] is able to perform simple, routine, and repetitive tasks, but not at a

4

> production-rate pace. No more than occasional interaction with supervisors, co-workers, and the general public. [Plaintiff] is able to tolerate few changes in a routine work setting.

(R. at 27).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 29).

Relying on the vocational expert's testimony, the ALJ found that, through the date last insured, Plaintiff was unable to perform his past relevant work as a fraud investigator or customer service representative. (R. at 31). The ALJ determined that, through the date last insured, considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (R. at 32–33). He therefore concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from February 14, 2014, the alleged onset date, through September 30, 2021, the date last insured (20 CFR 404.1520(g))." (R. at 33).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### III.  DISCUSSION

In his Statement of Errors, Plaintiff argues that because the ALJ failed to accommodate his gastritis in the RFC, the RFC is not supported by substantial evidence. (Doc. 13 at 3–4). Specifically, Plaintiff says that the ALJ's RFC determination should have included limitations regarding absences or off-task allowances resulting from his gastritis. (*Id.*). This is relevant to his ultimate disability determination, he says, because the vocational expert testified that being off task more than ten percent of the time or missing work once per month repetitiously would be work-preclusive.  (*Id.* at 4–5) (citing R. at 66).  Yet, as identified by the Commissioner, "not a single doctor – treating, consultative, or otherwise – opined he would need such limitations." (Doc. 14 at 1).  The Court finds that the ALJ's RFC determination is supported by substantial evidence and the Plaintiff's assignment of error is without merit.

Because Plaintiff filed his application after March 27, 2017, it is governed by the new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017).  A Plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012).  A Plaintiff's RFC assessment must be based on all the relevant evidence in his or her case

6

file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).

Plaintiff relies solely on his subjective reports that he needed to use the restroom frequently and urgently throughout the day due to his gastritis. (Doc. 13 at 3–4). Plaintiff testified before the ALJ that he made six to eight trips to the restroom throughout the day, this worsened with stress, and his need to use the restroom sometimes came on suddenly. (R. at 52). Plaintiff also regularly reported similar symptoms to his primary care physician. (R. at 277, 281, 292, 295, 303, 305, 309, 325, 331, 339, 344, 352, 355) (Plaintiff reporting diarrhea and urgency at appointments throughout 2015 to 2020). The ALJ did not ignore Plaintiff's testimony. Rather, he noted that Plaintiff testified he "needs to use the restroom numerous times a day, and his digestive difficulties are exacerbated by both stress and medication usage." (R. at 29). And he discussed the same primary care records Plaintiff now cites, stating that they "variously noted the presence of irritable bowel syndrome (IBS) with diarrhea, or IBS flares associated with the [Plaintiff's] mental impairments." (R. at 28) (citing R. at 282, 298, 304). And the ALJ accordingly adopted limitations on workplace changes, production, and pacing, so that Plaintiff's work would not "exceed his ability to deal with workplace stressors." (R. at 29). Yet, no doctor ever opined that Plaintiff's digestive impairment would require him to have off-task time or absences from work.

Indeed, the ALJ noted the lack of medical evidence or opinion regarding Plaintiff's digestive disorder when considering whether Plaintiff's impairments met or medically equaled a listing: "I could not find evidence in the record, nor testimony from a medical expert, to justify a finding that the [Plaintiff's] biliary colic or gastritis, either each by itself or in combination with each other or another impairment or impairments, medically equals a listing." (R. at 25). And, at

7

the hearing, the ALJ questioned whether Plaintiff was seeing a gastroenterologist to address his digestive impairments. (R. at 53). Plaintiff testified that he had seen a "GI doctor" in 2013, before the alleged onset of disability, for a colonoscopy, but had an "anaphylactic shock" during the procedure and had not been back. (*Id.*). He also testified that his primary care doctor would like him to see a specialist again, but he "just won't go through that again." (*Id.*).

The medical opinions which were available to the ALJ uniformly made no recommendation for off-task time or absences. The state agency physicians, for example, reviewed Plaintiff's primary care reports of diarrhea (R. at 97), but their RFC determinations—at both the initial and reconsideration levels—did not include any limitations regarding off-task time or absences (R. at 100–01, 109–10). The ALJ declined to adopt the state agency determinations only insofar as they opined that Plaintiff was capable of medium-level work, and the ALJ found that the nature of Plaintiff's back pain made light-exertional work, with additional "postural, climbing, and hazard exposure limitations[,]" more appropriate. (R. at 30). Additionally, the ALJ was partially persuaded by the opinion of a consultative examiner, Phillip Swedberg, M.D. (*Id.*) (citing R. at 431–40). In particular, the ALJ crafted an RFC consistent with Dr. Swedberg's recommended limitations, though he put them in more "vocationally defined terms." (*Id.*). Significantly, Dr. Swedberg noted that Plaintiff "denies nauseousness, vomiting or change in bowel habit[,]" (R. at 437), made no further observations regarding Plaintiff's digestive impairment or restroom use, and recommended no allowances for off-task time or absences in his determination of Plaintiff's RFC (R. at 439–40).

At base, the ALJ's reliance on the medical opinions before him constitutes substantial evidence for his RFC determination. Plaintiff identifies no objective medical evidence or medical opinions in the record that undermine this determination. Even if Plaintiff's subjective complaints

are credited entirely—and indeed, the ALJ did seem to credit Plaintiff's testimony—it does not follow that Plaintiff would require the kind of vocational accommodation he alleges. Plaintiff asks the Court to accept, based on his argument alone, that because he used the restroom six to eight times per day and sometimes with urgency, he would necessarily be off task from work ten percent of the day or else regularly miss at least one day of work per month. *See Leigh Ann D. v. Comm'r of Soc. Sec.*, No. 3:20-cv-322, 2022 WL 489317 (S.D. Ohio Feb. 17, 2022) at *4 (finding it "notable that none of the subjective complaints cited by Plaintiff actually demonstrate that her impairments would cause the limitations she advocates for[,]" and finding that plaintiff had not shown that her subjective difficulties "translate[d] to a finding that she would be off-task more than 15 percent of the time or regularly miss more than two days of work a month.") But, again, no doctor ever opined these limitations, and the record is silent regarding how much time Plaintiff routinely spent in the restroom due to his impairment. And from the Court's own review, there is only one noted absence due to his impairment. (R. at 295) (Plaintiff reporting that he had to cancel a prior appointment with his primary care physician due to severe diarrhea).

Plaintiff has not shown that significant evidence in the record supports the vocational limitations he suggests. The ALJ's RFC determination is supported by substantial evidence and must not be disturbed. To the extent Plaintiff alleges there was further error because the ALJ did not heed the vocational expert's testimony regarding how much off-task time and absences would be work-preclusive, that testimony was clearly not relevant to the ALJ's ultimate disability determination given that he did not incorporate off-task or absence limitations into the RFC.

Based on the foregoing, the Court **OVERRULES** Plaintiff's Amended Statement of Errors (Doc. 13) and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.

9

Date: July 25, 2023 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE